**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**JAMES SIMMONS,**

                              **Petitioner,**            **5:04-CV-539**
          **v.**                                      **(FJS)**
                                                     **Related Criminal Action**
**UNITED STATES OF AMERICA,**            **5:95-CR-318**

                              **Respondent.**
_____

**APPEARANCES**                                                **OF COUNSEL**

**JAMES SIMMONS**
**06798-052**
Cumberland Federal Correctional Institution
Camp Unit G
Cumberland, Maryland 21501
Petitioner *pro se*

**OFFICE OF THE UNITED**                       **ROBERT A. SHARPE, AUSA**
**STATES ATTORNEY**
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, New York 12207-0247
Attorneys for Respondent

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND[1]

     In an indictment that a federal grand jury for the Northern District of New York returned on September 13, 1995, Petitioner James Simmons and other individuals were charged with conspiring to possess and possessing and selling cocaine and crack cocaine in violation of 21

---

[1] The Court has derived the background information concerning this proceeding from the documents filed in the related criminal matter, *United States v. Simmons*, 5:95-CR-318 (N.D.N.Y.) ("Action No. 95-CR-318").

U.S.C. §§ 841(a), 846. *See* Action No. 95-CR-318 at Dkt. No. 2. On February 8, 1996, Petitioner pled guilty to the top count in that indictment in full satisfaction of all charges asserted against him in that accusatory instrument. *See id.* at Dkt. Nos. 36-37. Following that guilty plea, this Court sentenced Petitioner on July 22, 1997, to a fifty-seven month term of imprisonment, to be followed by six years of supervised release. *See id.* at Dkt. No. 99 at 8-9; *see also id.* at Dkt. No. 100.

After serving the custodial portion of his sentence, Petitioner was released from prison. Subsequently, on July 24, 2003, an Officer of the United States Probation Office for the Northern District of New York filed a petition with this Court, claiming that Petitioner had violated the terms of his supervised release. *See id.* at Dkt. No. 119. Specifically, the Probation Officer claimed that on July 3, 2003, Petitioner had pled guilty in Albany County Court to the attempted criminal sale of a controlled substance in the third degree and that the conduct underlying that guilty plea constituted a violation of the terms of his supervised release. *See id.* This Court thereafter scheduled a hearing relating to that petition and appointed Assistant Federal Public Defender Paul J. Evangelista, AFPD ("AFPD Evangelista") to represent Petitioner with respect to that petition. *See id.* at Dkt. No. 120.

On July 31, 2003, this Court presided over a hearing regarding the Probation Office's petition to revoke Petitioner's supervised release. At the beginning of that proceeding, the following exchange occurred between the Court and Petitioner:

> **The Court**: As you are aware, the Court has before it a petition finding you violated certain terms and conditions of your supervised release; that is, that you did, in fact, enter a plea of guilty to the attempted sale of a controlled

>                       substance in the third degree, which is a
>                       class C felony under New York State Penal
>                       Law.  Since this is a class C felony, it is also
>                       a level A violation and with your criminal
>                       history category of six, the policy statement
>                       under the sentencing guidelines calls for a
>                       period of incarceration of anywhere from 33
>                       to 41 months.
>
>                       Have you reviewed this charge with your attorney?
>
> **Simmons**:          Yes.
>
> **The Court**:        And you're aware of the consequences of
>                       your admission to this charge here?
>
> **Simmons**:          Yes.
>
> **The Court**:        Do you wish to make an admission to this
>                       particular violation?
>
> **Simmons**:          Yes.
>
> **The Court**:        All right, Mr. Evangelista, have you
>                       discussed this with your client?
>
> **Attorney
> Evangelista**:        Yes, your honor.  He's prepared to admit
>                       the entire petition.
>
> **The Court**:        All right.  So, Mr. Simmons, what is your
>                       position then, you do admit this conduct,
>                       that you are guilty of this violation, is that
>                       correct?
>
> **Simmons**           Yes.

*See* Action No. 95-CR-318 at Dkt. No. 126, "Transcript of Supervised Release Revocation

Hearing (7/31/03)" ("SR Transcript"), at 3-4.

Prior to imposing sentence on Petitioner, the Court inquired of Petitioner's counsel

3

about the sentence that Petitioner sought for his guilty plea to the violation of the terms of his supervised release. In response, AFPD Evangelista stated that

> Probation has worked very hard on this case . . . in conjunction with some of the state authorities in an attempt to have Mr. Simmons serve his time, as much of his state time as possible in the federal system, because of the resources that the federal system has, it's felt will greatly benefit Mr. Simmons. So I believe we would be asking for the high end of the range, your honor, for that purpose. It appears that 36 months may be the statutory range of imprisonment, so we would be asking for that as a sentence, as odd as that sounds, to benefit Mr. Simmons.

*See* SR Transcript at 4-5.

This Court then sentenced Petitioner to the thirty-six month term of imprisonment that his counsel requested for his conviction for violating the terms of his supervised release. *See id.* at 11.

Petitioner filed the current Motion to Vacate, Set Aside or Correct that sentence on May 13, 2004. *See Simmons v. United States*, 5:04-CV-539 ("Action No. 04-CV-539") at Dkt. No. 1 ("Motion to Vacate").[2] In that application, Petitioner proposes several theories to support his claim that his counsel provided him with ineffective assistance at the supervised release revocation hearing. *See id.* Subsequently, the Court instructed Respondent to file its response in opposition to the Motion to Vacate no later than July 9, 2004. *See id.* at Dkt. No. 4. When Respondent did not timely file its response, Petitioner filed a motion for summary judgment in this action based upon Respondent's failure to file any papers in opposition to his Motion to Vacate. *See id.* at Dkt. No. 4. Respondent thereafter sought, and this Court granted, an

---

[2] Petitioner also filed a memorandum of law in support of his Motion to Vacate. *See* Action No. 04-CV-539 at Dkt. No. 2 ("Supporting Mem.").

4

extension of time in which to file its papers in opposition to Petitioner's Motion to Vacate. *See id.* at Dkt. No. 5. On October 8, 2004, Respondent filed its memorandum of law in opposition to Petitioner's petition, *see id.* at Dkt. No. 6, following which Petitioner filed a Reply in further support of his motion for summary judgment. *See id.* at Dkt. No. 8.

## II. DISCUSSION[3]

### A. Failure to file appeal

Initially, the Court notes that Petitioner did not file an appeal from the judgment that forms the basis for his Motion to Vacate. *See* Motion to Vacate at ¶ 8.

Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003) (citations omitted)); *see also Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Thus, federal courts are typically prohibited from considering claims that a petitioner raises for the first time in a section 2255 motion unless the movant demonstrates either (1) cause for his failure to raise the issue and resulting prejudice or (2) actual innocence. *See Rosario v. United States*, 164 F.3d 729, 732 (2d Cir. 1998) (citations omitted); *see also Diaz v. United States*, Nos. 02 CR. 1622, 04 Civ. 1829,

---

[3] As a preliminary matter, the Court notes that Petitioner's motion for summary judgment, *see* Action No. 04-CV-539 at Dkt. No. 4, is based entirely upon Respondent's failure to timely file papers in opposition to his Motion to Vacate. *See id.* However, after the filing of that motion, this Court granted Respondent's request for an extension of time, until October 8, 2004, to file its opposition papers. *See id.* at Dkt. No. 5. Respondent timely filed its papers. *See id.* at Dkt. No. 6. Accordingly, the Court **denies** Petitioner's motion for summary judgment.

2005 WL 1522346, *2 (S.D.N.Y. June 27, 2005) (citation omitted).

The Second Circuit, however, has held that the procedural default rule discussed in *Bousley* "does not apply to claims of ineffective assistance of counsel" raised in a Motion to Vacate brought pursuant to § 2255. *Fountain v. United States*, 357 F.3d 250, 254 (2d Cir. 2004) (citing *Massaro*, 123 S. Ct. at 1696); *see also Abrahamson v. United States*, No. 03 Civ. 4677, 2004 WL 885830, *2 (S.D.N.Y. Apr. 26, 2004) (quotation omitted). Thus, Petitioner's failure to file an appeal regarding his ineffective assistance claims does not prohibit him from asserting these claims for the first time in the present action. *See Smith v. United States*, No. 04 Civ.1516, 2004 WL 2504381, * 3 (S.D.N.Y. Nov. 8, 2004); *Abrahamson*, 2004 WL 885830, at *2.

**B.   Substance of Petitioner's motion to vacate**

In his Motion to Vacate, Petitioner argues that he received the ineffective assistance of counsel in conjunction with the supervised release revocation hearing.[4] Specifically, Petitioner claims that his court-appointed attorney failed to (1) request that he be evaluated to determine whether he suffered from a mental disease or defect, (2) move for a downward departure based upon his diminished capacity and psychiatric disorder, (3) advise the Court that the State of New York had "dropped" the charges upon which the federal revocation hearing was based, and (4) properly advise him of the sentencing exposure to which he was subject if he were found guilty of violating the terms of his supervised release. *See* Motion to Vacate at Grounds One

---

[4] Although Petitioner's Motion to Vacate asserts four separate grounds for relief, each of these claims alleges different theories to support his argument that he received ineffective assistance of counsel. *See* Motion to Vacate at Grounds One through Four.

through Four.

The Supreme Court has articulated a two-pronged test that courts must use to determine whether a criminal defendant has received ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 688-90, 694 (1984). To establish ineffective assistance under this test, a party must show "'(1) that counsel's representation fell below an objective standard of reasonableness measured by the prevailing professional norms; and (2) [prejudice, i.e.,] that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.'" *United States v. Champion*, 234 F.3d 106, 109 (2d Cir. 2000) (quotation omitted); *United States v. Gordon*, 156 F.3d 376, 379 (2d Cir. 1998) (per curiam) (citing *Strickland*, 466 U.S. at 688-90, 694, 104 S. Ct. 2052) (other citation omitted). Applying this two-prong test to the facts of this case, the Court will consider each of the claims that Petitioner raises in support of his Motion to Vacate in turn.

### *1. Failure to request psychiatric evaluation of Petitioner*

Petitioner initially faults his counsel for failing to request that he be evaluated for the existence of a mental disease or defect prior to the hearing on the revocation of his supervised release. *See* Motion to Vacate at Ground One.

Section 4241 of title 18 of the United States Code, entitled "Determination of mental competency to stand trial," provides, in relevant part, as follows:

> **(a) Motion to determine competency of defendant.** – At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court

> shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.

18 U.S.C. § 4241(a).[5]

Additionally, a convicted felony offender, who suffers from a mental disease or defect, may seek confinement to a mental facility in lieu of a federal prison pursuant to 18 U.S.C. § 4244, which provides, in pertinent part, as follows:

> **(a) Motion to determine present mental condition of convicted defendant.** – A defendant found guilty of an offense, or the attorney for the Government, may, within ten days after the defendant is found guilty, and prior to the time the defendant is sentenced, file a motion for a hearing on the present mental condition of the defendant if the motion is supported by substantial information indicating that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility. The court shall grant the motion, or at any time prior to the sentencing of the defendant shall order such a hearing on its own motion, if it is of the opinion that there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect for the treatment of which he is in need of custody for care or treatment in a suitable facility.

18 U.S.C. § 4244(a).[6]

---

[5] Courts may conduct competency hearings pursuant to 18 U.S.C. § 4241(a) in conjunction with petitions relating to the alleged violation of the terms of an individual's supervised release. *See, e.g., United States v. Morris*, No. CR.A.95-50, 2005 WL 348306, *1 (D. Del. Feb. 8, 2005); *United States v. Avery*, 328 F. Supp. 2d 1269, 1271-74 (M. D. Ala. 2004).

[6] A court may *sua sponte* order a competency hearing under 18 U.S.C. § 4244. *See Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001) (citations omitted).

However, hearings under either of these statutes are only appropriate where the evidence suggests that the defendant may be mentally incompetent. *See United States v. Towns*, 19 F. Supp. 2d 64, 65-66 (W.D.N.Y. 1998) (hearing under 18 U.S.C. § 4241(a) warranted only where there is "'reasonable cause to believe' the defendant [is] incompetent" (quotation omitted)); *Medina v. McGinnis*, No. 04 Civ. 2515, 2004 WL 2088578, *12 (S.D.N.Y. Sept. 20, 2004) ("there is no requirement to order a competency examination or hearing [under 18 U.S.C. § 4241(a)] if the trial court has not been given reasonable cause to believe that a defendant may be incompetent" (collecting cases)); *United States v. Gonzalez-Ramirez*, 350 F.3d 731, 733 (8th Cir. 2003) (hearings under 18 U.S.C. § 4244(a) are only appropriate where "substantial information" available to the court establishes that there is "'reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect'" (quoting 18 U.S.C. § 4244(a)).

This Court personally addressed Petitioner at the supervised release revocation hearing. *See* SR Transcript at 3-5; 8-11. At no time during that proceeding did Petitioner claim that he was not mentally competent to enter a plea regarding the charge that he violated the terms of his supervised release. Nor did any of his responses to the questions that this Court posed to him, or his conduct at that proceeding, suggest that his mental competency was at issue in any way.[7] Since no objective evidence in the record supports Petitioner's current claim that his mental competency at the supervised release revocation hearing was, in any way, in question, AFPD Evangelista did not act in an objectively unreasonable manner by failing to request that this

---

[7] The burden of proving incompetency rests with the party seeking such declaration. *See United States v. Gigante*, 996 F. Supp. 194, 199 (E.D.N.Y. 1998) (citations omitted).

Court order a competency hearing for Petitioner. Nor did counsel act in an objectively unreasonable manner by failing to request a hearing to seek Petitioner's confinement in a mental health hospital, rather than a federal correctional institution, based upon his alleged mental disease or defect. Accordingly, the Court holds that Petitioner is not entitled to habeas relief based upon this theory.

### *2. Failure to seek downward departure due to diminished capacity*

Petitioner next contends that his counsel rendered ineffective assistance because he failed to request that this Court consider Petitioner's claimed diminished capacity in the context of a motion for a downward departure pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 5K2.13. *See* Motion to Vacate at Ground Two; Supporting Mem. at 6. Specifically, he argues that his counsel was "required to move this Court for such a downward departure based on the facts of this case," which included Petitioner's voluntary drug abuse and diminished mental capacity. *See* Supporting Mem. at 6.

Section 5K2.13, which is a Policy Statement, provides that

> [a] sentence below the applicable guideline range may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.
>
> However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to

10

> protect the public because the offense involved actual violence or a serious threat of violence; (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public; or (4) the defendant has been convicted of an offense under chapter 71, 109A, 110, or 117, of title 18, United States Code.

U.S.S.G. § 5K2.13.

Thus, a party must establish two factors to receive a downward departure under this section: (1) reduced mental capacity which was not the result of the voluntary use of drugs and (2) "'a causal link between that reduced capacity and the commission of the charged offense.'" *United States v. Piervinanzi*, 23 F.3d 670, 684 (2d Cir. 1994) (quotation omitted); *United States v. Laureano*, 165 F. Supp. 2d 499, 501 (S.D.N.Y. 2001) (quotation omitted).

In light of Petitioner's candid admission that his claimed diminished capacity regarding the underlying offense was attributable to his own, voluntary drug use, *see* Supporting Mem. at 6, it is readily apparent that his counsel could not have properly sought a downward departure regarding the sentence under U.S.S.G. § 5K2.13. Moreover, nothing in the record supports Petitioner's claim that he suffered from a diminished capacity at the time he committed the crime of the attempted sale of a controlled substance in the third degree. Based upon this evidence, Petitioner's unsupported allegations that his counsel was constitutionally required to file the downward departure motion under U.S.S.G. § 5K2.13 is clearly insufficient to warrant either the granting of his petition or an evidentiary hearing relating to this issue. *See*, *e.g.*, *United States v. Tarricone*, 996 F.2d 1414, 1418-19 (2d Cir. 1993) (evidentiary hearing on action brought pursuant to § 2255 not warranted unless the petitioner has made plausible showing that his attorney's conduct was unreasonable). Accordingly, because Petitioner has not established that his counsel's failure to make an application for a downward departure was

11

objectively unreasonable, the Court holds that he is not entitled to habeas relief based upon this theory.

### 3. Failure to advise the Court that the State of New York was not pursuing criminal charges against Petitioner

In his third ground for relief, Petitioner claims that his counsel erroneously advised this Court that Petitioner would receive a sentence of thirty-six months incarceration in a state correctional facility for his conviction on the charge of third degree attempted criminal sale of a controlled substance. *See* Motion to Vacate at Ground Three. Specifically, he claims that the State of New York "dropped the charges" relating to that crime and that, if counsel had not misinformed this Court about the status of that criminal matter, the Court would not have imposed the thirty-six (36) month sentence upon Petitioner but, instead, might have reinstated him to supervised release "with a positive recommendation from the Mental Health Evaluatory [*sic*] Facility." *See* Supporting Mem. at 7-8.

In opposing Petitioner's motion, Respondent provided this Court with an affidavit of AFPD Evangelista. *See* Action No. 04-CV-539 at Dkt. No. 6 at Exhibit "F" ("Evangelista Aff."). In that affidavit, AFPD Evangelista declared that, prior to the July 31, 2003 hearing before this Court, he "verified that Mr. Simmons had pled guilty to a drug charge in Albany County Court and was to receive [a] 4 to 8 year[]" state sentence that would run concurrently with the period of incarceration that Petitioner would serve as a result of his federal supervised release violation. *See* Evangelista Aff. at ¶ 18. Respondent also provided this Court with an affidavit of Francisco Calderone, Esq., an Assistant District Attorney with Albany County. *See*

Action No. 04-CV-539 at Dkt. No. 6 at Exhibit "D" ("Calderone Aff."). In his affidavit, Attorney Calderone declared that he examined the files that the Albany County District Attorney maintained regarding the attempted criminal sale of a controlled substance charge to which Petitioner pled guilty and, based upon that review, he concluded that the conviction had "not been dismissed and the case is still pending in Albany County Court." *See* Calderone Aff. at ¶ 8.

In an effort to establish conclusively the status of the charges brought against Petitioner that resulted in the supervised release revocation hearing that this Court conducted, a staff attorney for this District contacted the Albany County Clerk's Office and inquired about the status of the criminal charges, if any, pending against Petitioner concerning the third degree attempted criminal sale of a controlled substance. On July 19, 2005, a deputy clerk of that office responded and advised the Court as follows:

> This is to confirm the status of the case [*People v. Simmons*, Index No. DA536-03].[8] Our records indicate that a guilty plea was entered by Mr. Simmons on July 3, 2003 before the Hon. Stephen W. Herrick, Albany County Court Judge. [Petitioner pled] guilty to a reduced count of Attempted Criminal Sale of a Controlled Substance in the 3rd Degree, in violation of Penal Law § 110/220.39-01, a Class C Felony.
>
> Our records further reflect that the promised sentence is to be 4-8 years to run concurrently with Federal Time owed. Originally, sentencing with regard to this matter was scheduled for August 28, 2003; sentencing is now adjourned without date.

*See* Action No. 04-CV-539 at Dkt. No. 9.

---

[8] The attempted criminal sale of a controlled substance charge to which Petitioner pled guilty received the index number DA536-03 in Albany County Court. *See* Calderone Aff. at ¶ 3.

The information contained in the Albany County Clerk's July 19, 2005 letter is consistent with the affidavit testimony that both AFPD Evangelista and ADA Calderone provided regarding Petitioner's sentencing exposure on his state-court conviction of third degree attempted criminal sale of a controlled substance. Petitioner, by contrast, has submitted nothing more than pure surmise to establish his claim that the criminal charges brought against him that formed the basis of the supervised release revocation hearing are no longer pending against him.[9] Accordingly, the Court rejects Petitioner's claim that his counsel inaccurately advised the Court of the term of imprisonment to which Petitioner was subjected in state court and, therefore, holds that Petitioner is not entitled to habeas relief based upon this theory.

### *4. Term of imprisonment to which Petitioner believed this Court would sentence him*

As a basis for his fourth and final ground for relief, Petitioner claims that he "completely misunderstood" the terms of the sentencing exposure he faced following his guilty plea at the supervised release revocation hearing. *See* Supporting Mem. at 8. Specifically, he asserts that he "was so confused with the conduct of defense counsel" that he believed that, upon pleading guilty to violating the terms of his supervised release, the Court would sentence him to thirty-six (36) *days*, rather than thirty-six (36) *months*, of incarceration in a federal correctional institution. *See* Motion to Vacate at Ground Four; Supporting Mem. at 8-9.

The record of the supervised release revocation hearing squarely contradicts this allegation. As this Court has outlined more fully above, the transcript of that hearing clearly

---

[9] At the supervised release revocation hearing, the Court noted, without any objection from Petitioner, that he was facing a sentence of between four and eight years' imprisonment relating to the state charges to which he had pled guilty. *See* SR Transcript at 7-8.

establishes that Petitioner *specifically acknowledged* that he was aware that his state-court guilty plea subjected him to a term of federal imprisonment of between thirty-three to forty-one months. *See* SR Transcript at 3-4. Additionally, Petitioner never voiced any concern at the supervised release revocation hearing when his counsel requested that this Court sentence him at the high end of that range, thirty-six (36) months' imprisonment. *See* SR Transcript at 4-5. Finally, when this Court ultimately imposed the sentence of thirty-six (36) months on Petitioner at the supervised release revocation hearing, he did not advise the Court of the enormous disparity that he now claims existed between the sentence he believed he was to receive and the sentence that this Court actually imposed on him on that date. *See* SR Transcript at 11-12. Accordingly, because the transcript of the supervised release revocation hearing clearly contradicts Petitioner's claim that he labored under the misunderstanding that he would only receive a sentence of thirty-six (36) days, rather than thirty-six (36) months, as a result of his pleading guilty to violating the terms of his supervised release, this Court holds that Petitioner is not entitled to habeas relief on this ground.

### III. CONCLUSION

After carefully reviewing the file in this matter, the parties' submissions, the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Petitioner's Motion for Summary Judgment is **DENIED** in its entirety; and the Court further

**ORDERS** that Petitioner's Motion to Vacate is **DENIED** in its entirety; and the Court further

**ORDERS** that the Clerk of the Court serve a copy of this Order on the parties by electronic or regular mail.

**IT IS SO ORDERED.**

Dated: August 22, 2005
Syracuse, New York

Frederick J. Scullin, Jr.
Chief United States District Court Judge